UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
Esther Johnson,

              Plaintiff,

    -against-

Building Service 32B-J Health Fund,
Building Service 32B-J Pension Fund,
the Board of Trustees of the Building
Service 32B-32J Health Fund, and the
Board of Trustees of the Building
Service 32B-32J Pension Fund,

             Defendants.
------------------------------------------------------------X

08 CV 03314

JUDGE RAKOFF

**VERIFIED COMPLAINT
AND JURY DEMAND**

Docket No.

RECEIVED
APR 02 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## PRELIMINARY STATEMENT

This action is brought by Esther Johnson, a disabled office cleaner, to challenge the denial of her claim for benefits under plans governed by the Employee Retirement Income Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. § 1001 et seq. Plaintiff seeks an order and judgment ordering payment of the benefits for which she is eligible, or, in the alternative, requiring Defendants to make a full and fair review as required by Section 503 of ERISA, 29 U.S.C. § 1133.

1

## JURISDICTION

1. This Court has jurisdiction over this action under ERISA § 502(e), 29 U.S.C. § 1132(e). Jurisdiction is also conferred by ERISA §§ 502(a)(1)(B) and 502(a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3), and, as an action brought pursuant to a federal statute, by 28 U.S.C. § 1331.

## VENUE

2. The Southern District of New York, the location of Defendants' principal offices, is an appropriate venue pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## THE PARTIES

3. Plaintiff Esther Johnson is a fully vested participant of the Building Service 32B-J Pension Fund and the Building Service 32B-32J Health Fund ("the Health Fund"). She resides in the Southern District of New York at 1833 Amsterdam Avenue, Apartment 3D in the County, City, and State of New York.

4. The United States Social Security Administration has determined that Plaintiff has been disabled since June 26, 2002.

5. Defendants are employee benefit plans, as defined by 29 U.S.C. § 1002, and their trustees, whose principal offices are in the Southern District of New York at 101 Avenue of the Americas in the County, City, and State of New York. Defendants are subject to ERISA, pursuant to 29 U.S.C § 1003.

6. On information and belief, the employer for whom Plaintiff worked prior

2

to becoming disabled has enjoyed and continues to enjoy significant tax advantages due to Defendants' claimed adherence to all of the requirements of ERISA, including but not limited to the requirement that the plans be administered in accordance with their terms and in the sole interest of their participants and beneficiaries.

## STATEMENT OF FACTS

### Background

7. Plaintiff has a long history of work, starting at age five when she worked full days picking cotton. Other jobs she has held include factory worker, supermarket cashier, letter carrier, and waitress. She held her final job, as an office cleaner, from 1989 until her disabling accident eleven years later. For two of those years, she also worked as a home attendant for seven hours each day, while continuing to work as an office cleaner eight hours each day, until a physician ordered her limit herself to one full-time job, in the wake of a near heart attack.

8. During the period of her employment as an office cleaner, Plaintiff was a loyal and dues-paying member of the Local 32B-32J Service Employees International Union, AFL-CIO, or its successors. After the required first twelve months of employment she became a permanent employee, a shop steward, and a participant in its benefit plans.

9. Plaintiff, like other participants, believed that her participation in the benefit plans protected her and that in the event she became disabled she would not be rendered destitute and forced to depend solely on government programs or the largess of private charity.

10. Plaintiff believed that benefits promised in the plans to participants who

become disabled were not a mere gratuity, but a contractual right and a vested property interest, which participants, like herself, earn as part of their compensation for years of arduous service.

11. Plaintiff worked in several unionized buildings. Her job duties included dusting, vacuuming and emptying garbage and recycling bins. The bins were very heavy and Plaintiff had to lift the liner bags out of the bins and heave them onto a cart.

### Injures and Claims

12. On February 21, 2001, Plaintiff injured her spine while lifting bags of garbage.

13. An MRI performed five months later, on July 18, 2001, found Plaintiff to have, <u>inter alia</u>, degeneration of her spine at discs L2-3, L3-4, L4-5, and L5-S1, and lumbar spondylosis (degenerative lesions in the lower spinal column) and mild lovoscoliosis (bending of the spinal column to the left). At L1-2 there was facet osteoarthritis, at L3-4 there was a mild disc bulge, facet osteoarthritis, and ligamentous hypertrophy (enlargement of the ligament), at L4-5 a central herniated disc, facet osteoarthitis, and ligamentous hypertrophy, and at L5-S1 a herniated disc, facet osteo-disc bulges at L1-2, L2-3, and L3-4, herniated discs at L4-5 and at L5-SI, a herniated disc, facet osteoarthritis, and ligamentous hypertrophy.

14. Plaintiff returned to work, despite the persistence of pain and limitations caused by her injuries and her chronic and degenerative impairments. She tried to carry out her job duties while wearing a back brace and taking Vioxx, Celebrex and Mortin.

15. On June 26, 2002, while Plaintiff was lifting a garbage bag onto her cart the forward motion pulled her over and she fell onto the concrete floor, landing on her right

knee. The sharp pain precluded Plaintiff from continuing to work that day.

16. The next day, as Plaintiff was going to work, the pain in her knee was so intense she could not make it down the stairs to the subway. No longer able to take the subway, from then until she stopped working, Plaintiff had to be driven to work by a co-worker.

17. The pain continued and Plaintiff bought an ace bandage to brace the injured knee. Her doctor gave her Vioxx and Celebrex, in addition to which she took aspirin, but the pain persisted. At this time she developed a heart murmur, possibly from her pain medications. Her knee also began to swell up.

18. One weekend in July, 2002, Plaintiff was descending the steps of a bus when her right knee locked up and she fell face-forward. The fall resulted in a chipped bone in her ankle, and required her to wear a cast on her ankle for about a week.

19. Once the ankle cast was removed, Plaintiff returned to work, but her knee pain had not subsided. She took her three weeks of vacation to rest her knee.

20. Plaintiff tried to return to work following her vacation, but the pain continued. By September 10, 2002, Plaintiff was no longer able to continue working.

21. One of her doctors, Ohannes A. Nercessian, M.D., had her undergo an MRI, which showed that she had a torn meniscus and needed arthroscopic meniscectomy and debridement..

22. She had the surgery on September 10, 2002.

23. After the surgery and post-surgical therapy, Plaintiff tried again to go back to work. Both Dr. Nercessian and Malcolm D. Reid, M.D., another treating physician, told her

that her knee injury precluded her from continuing to work.

24. Immediately after injuring her knee, Plaintiff spoke with Bob Wilson, her union representative. Mr. Wilson told her to apply for disability benefits. However, when Plaintiff telephoned Defendants' offices and asked about applying for benefits, she was told that she could not qualify because she was hurt on the job. She was advised instead to apply for Workers' Compensation.

25. On or about September 16, 2002, Plaintiff successfully applied for Workers' Compensation. To date, Plaintiff has remained eligible for such benefits.

26. Plaintiff also applied for Social Security Disability Insurance. Her claim was at first denied but after a hearing an administrative law judge found that her "allegation are credible," and that she had been disabled since September 10, 2002, the date she stopped working.

27. Plaintiff applied to Defendants for benefits based on disability in both March and April of 2003. A few days after mailing one of those applications, she called to make sure it was received. She was again told on the phone that she was not eligible for disability benefits because her injury occurred on the job.

28. On April 15, 2003, in an attending physician's statement, Dr. Nercessian informed Defendants of his opinion that Plaintiff was totally disabled by reason of a meniscal tear in her right knee. By letter dated April 10, 2003, Dr. Nercessian also informed Defendants that Plaintiff suffered from a torn meniscus of the right knee, for which she underwent arthroscopic meniscectomy and debridement.

29. April 10, 2003, Dr. Reid certified to Defendants that Plaintiff's disability was total.

30. In a letter dated May 19, 2003, Defendants stated that Plaintiff claim had been denied. Plaintiff did not receive the May 19, 2003, letter denying her claim. Nor did she receive the adverse certificate of Defendants' physician, dated April 22, 2003. The first time she saw these was when her attorneys sent copies to her. The letter did not have Plaintiff's address on it and there was no proof of mailing or receipt. Had Plaintiff received the May 19, 2003 letter, she would have appealed immediately.

31. In March of 2005, Plaintiff met again with her union representative, Bob Wilson, in yet another effort to determine her eligibility for benefits. Plaintiff informed Mr. Wilson that her doctors believe her to be permanently disabled. Heeding Mr. Wilson's advice, Plaintiff filed an application in April 2005.

32. On April 8, 2005, Dr. Reid supported Plaintiff's application with a letter stating his conclusion that Plaintiff was "totally and permanently disabled" by reason of being "unable to be gainfully employed in any capacity as a result of bodily injury or disease." He also advised Defendants that since the symptoms or illness began, Plaintiff's condition had "retrogressed."

33. Had Plaintiff known she should have applied earlier to Defendants for benefits, she would have done so, but she was told on two occasions, once in 2002 and again in 2003 that she had to apply instead for Workers' Compensation.

34. By letter dated April 20, 2005, Defendants denied Plaintiff's claim on the

alleged ground that she did no have at least three consecutive years of eligibility as result of "covered employment." No further explanation was provided; Plaintiff had held the position in question since 1989. (In fact, in a table set forth in a letter dated December 28, 2006, Defendants have more recently confirmed that from in each year of 13 consecutive years starting in 1990 had earned a full vesting credit.)

35.  On May May 2, 2005, within the allotted 180 days of the denial, Plaintiff informed Defendants, that she was appealing the denial of her claim.

36.  By letter dated July 6, 2005, Defendants told Plaintiff that her time for filing an appeal had run and, that her appeal would therefore not be considered.

37.  On September 12, 2005, Plaintiff's newly retained counsel wrote the Health Fund a letter, pointing out that the appeal had, in fact, been timely.

38.  On January 25, 2006, at Defendants request, Julian Sosner, M.D., examined of the Plaintiff and concluded that her disability was "partial."

39.  On April 26, 2006, Plaintiff appeared, with her counsel, before Defendants' Appeals Committee.

40.  By letter dated May 1, 2006, the Appeals Committee notified Plaintiff of its conclusion that she was not disabled and that therefore not eligible for benefits. .

## CLAIMS FOR RELIEF

### First Claim for Relief

41.  Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides

participants with the right to bring an action against an ERISA plan which has breached its obligation to pay benefits

42. Since September 10, 2002, Plaintiff has met the eligibility criteria for disability benefits of both the Health Fund and Pension Fund.

43. Notwithstanding her eligibility, Defendants have refused to pay Plaintiff any benefits.

44. As a consequence of the foregoing, Defendants have breached their obligation to pay benefits due to Plaintiff under the terms of the Plan documents.

**Second Claim for Relief**

45. Pursuant to Section 503 of ERISA, 29 U.S.C. § 1133(2), an ERISA-plan is required to provide benefit claimants with a "full and fair review."

46. In order to comply with this duty, Defendants are required not only to evaluate a claimant's physical limitations but to determine whether the claimant "has the vocational capacity to perform any type of work of a type that exists in the national economy that permits her to earn a reasonably substantial income from her employment, rising to the dignity of an income or livelihood." Demirovic v. Building Service 32 B-J Pension Fund, 467 F.3d 208, 215 (2d Cir. 2006).

47. Defendants have failed to a full and fair review pursuant to Section 503 of ERISA as defined by the United States Court of Appeals for the Second Circuit.

48. As a consequence of the foregoing, Plaintiff's denial of Plaintiff's claim was arbitrary and capricious and in violation of ERISA.

## CONCLUSION

Wherefore Plaintiff that this Court render a judgment and order for all benefits due to her retroactively and prospectively under the terms of the relevant plan documents, with interests and costs, or, alternatively, directing Defendants provide her claim a full and fair review, and granting such other relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff asks that her case be tried by a jury.

DATED:  Brooklyn, New York
        March 20, 2008

                                        Respectfully submitted

                                        /s/ Gary Stone

                                        Gary Stone (GS5563)
                                        Of counsel to John C. Gray, Esq.
                                        South Brooklyn Legal Services
                                        Attorney for Plaintiff
                                        105 Court Street, 3rd Floor
                                        Brooklyn, New York 11201
                                        Tel. (646) 442-3310

**VERIFICATION**

State of New York            }
County of Kings New York     } ss.:

       I have read the foregoing complaint and hereby declare under penalty of perjury that I know the statements made therein to be true or, where stated to be based on information and belief, believe them to be true.

                                                                 _Esther Johnson_
                                                                 Esther Johnson

Sworn to before me this 2 day
of April 2, 2008